PEOPLE v. GONSLER.

1. HOMICIDE—JUSTIFIABLE HOMICIDE—QUESTION FOR JURY.
   In prosecution for murder, where defendant claimed that at time of shooting he was attempting to arrest decedent for burglary, but people's testimony tended to show that decedent was shot without warning or justification, question of justifiable homicide was properly submitted to jury, under proper instructions.

2. SAME—MURDER CHARGE PROPERLY SUBMITTED.
   Under the facts of the case, trial judge *held*, justified in submitting to jury charge of murder.

Error, to Genesee; Black (Edward), J.   Submitted June 12, 1930.   (Docket No. 104, Calendar No. 34,602.)   Decided October 3, 1930.

Paul Gonsler was charged with murder and convicted of manslaughter.   Affirmed.

*C. A. Withey,* for appellant.

*Wilber M. Brucker,* Attorney General, *Charles D. Beagle,* Prosecuting Attorney, and *Ralph M. Freeman,* Assistant Prosecuting Attorney, for the people.

NORTH, J.   This defendant charged with murder was convicted of manslaughter.   The two claims presented to this court by his writ of error are:

1.   That the court erred in denying his motion for a directed verdict of not guilty on the ground that he was justified in taking the life of decedent in an effort to effect the latter's arrest.

Degree of homicide in resisting arrest, see annotation in 66 L. R. A. 353; 33 L. R. A. (N. S.) 143.

2. That there was no testimony tending to establish the charge of murder either in the first or second degree, and prejudicial error was committed by the court in charging the jury at length as to murder both in the first and second degree.

The defendant and two of his brothers, together with other members of the family, occupied a dwelling in Flint, Michigan. There was a garage in the rear of the premises. The defendant and his brother were engaged in the illicit sale of moonshine whisky. Some of their stock in trade had been stolen from the garage above mentioned and from another garage used as a place of storage. They installed an electric alarm so arranged that when containers standing in the garage were lifted a bell or buzzer located in the house would be sounded. About two o'clock in the morning of March 18, 1929, the deceased, Harry Seeback, and probably another person whose identity has not been ascertained, attempted to burglarize the garage on defendant's premises. Being awakened by the alarm, the defendant and his brother Simon began an investigation. Defendant, taking a loaded shotgun which had been borrowed for such an occasion, went out on the back porch of the house and down the steps toward the garage. The brother Simon by means of an electric button located near the back door of the house turned on a light at the front of the garage. Just at this time deceased was discovered. There is a dispute in the testimony as to whether he was leaving the garage or whether he had not yet entered. There is also a dispute as to whether the defendant indicated to deceased that he was attempting to apprehend him by commanding him to halt or throw up his hands. There is testimony that the deceased started to run, and was going between de-

fendant's garage and another closely adjacent at the time defendant shot him and inflicted wounds from which he later died.

Witnesses in behalf of the defense testified that, before the shooting, defendant commanded the fleeing man to "stop and stick them up." Witnesses for the prosecution who were so situated at the time they probably would have heard such a command if given testified that they did not hear it. A dying declaration was made by the deceased and admitted in evidence without objection. In part it is as follows:

"Paul (the defendant) did not pay me the money he owed me and I was going to steal the whisky he had in his garage. * * * I did not (get into the garage). I was shot without warning as I was going out the driveway, and he (Paul) did not say anything to me, but shot me. * * * He was sore at me, he owed me money. I did not get to the garage and was going out the driveway when I was shot without any warning. * * * He (Paul) was very dirty to me and owed me $12 and would not pay me. His brother Bill, hi-jacked me about a year ago, took a load of booze from me, and I was going to steal their liquor and get even with them. This is the truth. They did not say anything to me, just shot me without warning."

We refrain from quoting further from the testimony, but have detailed the above for the purpose of noting that the record clearly presents a disputed question of fact as to whether or not this was a justifiable homicide committed by defendant in an attempt to arrest the deceased. The defense of life or limb or of defendant's habitation was not involved if the dying declaration was true. Evidence of defendant's conduct had a material bearing upon the

question of intent. This issue of justifiable homicide was submitted to the jury under instructions of which defendant cannot justly complain, and resulted in a verdict adverse to the accused.

In addition to the portion of the record above reviewed and as bearing upon the propriety of submitting to the jury the charge of murder, it may be noted that one of the people's witnesses who was a police officer testified that he was called to the Gonsler home on the morning of the shooting and he there asked the defendant "if there had been any shooting and he said, 'No.'" Defendant was further asked "if he heard any sound like a shooting and he said 'Possibly so,' he said he heard a loud explosion." The undisputed testimony discloses that notwithstanding defendant's claim that they were attempting the arrest of the intruder, neither he nor his brother attempted to pursue him after the shooting, nor did they call the police. Instead, when a neighbor reported that he had seen another man coming out of the garage shortly after the shot was fired, defendant said to his brother Simon "we will get him before he plugs us;" and they thereupon drove to the home of the party whom they suspected, but, discovering nothing to indicate that he was implicated in this affair, the defendant and his brother returned to their own home. In addition to these and other facts which might be noted, it is also of consequence on this phase of the record that the jury by its verdict found the shooting was done by the defendant without justification. This necessarily follows, by reason of the court's charge wherein he said:

"Both officers and private persons seeking to prevent a felon's escape must exercise reasonable care to prevent the escape of the felon without doing

personal violence, and it is only where killing him is necessary to prevent this escape, that the killing is justified, and it is for you as jurors to determine from the evidence in the case the existence or absence of the necessity. If a killing is not justifiable, it is either murder or manslaughter."

The trial judge was amply justified in submitting to the jury the charge of murder. The conviction of the accused on the charge of manslaughter is sustained, and the judgment of the lower court affirmed.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.