PEOPLE v WHITTY

Docket No. 78-1732. Submitted November 15, 1979, at Detroit.—Decided April 1, 1980.

Defendant, Roosevelt Whitty, was convicted of first-degree murder in the Wayne Circuit Court, Myron H. Wahls, J. Defendant was the manager of a party store owned by the woman with whom he lived. On the night of the incident giving rise to the charge, a man identified as Gregory Smith entered the store and asked for the defendant. The clerk informed Smith that defendant was busy but that she would get him in a minute. After subsequent requests to see defendant were answered in the same manner, Smith pulled a gun and robbed the cash register, threatening to kill defendant and threatening to kill the clerk if she told anyone who it was that had robbed the store. Defendant was in the back of the store and did not witness the robbery. The police came. The clerk knew Smith, and through her identification defendant also recognized that it was Smith who had robbed the store. The two police officers who took the report both testified that defendant told them he would kill Smith if he found him before the police did. Defendant set out with some friends to find Smith, found him at the Granwood Hotel and admitted shooting him. Testimony differed as to the events surrounding the shooting. Debra Bishop testi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest §§ 34, 36, 70, 71.
[2, 4] Homicide: private person's authority, in making arrest for felony, to shoot or kill alleged felon. 32 ALR3d 1078.
[3, 12] 5 Am Jur 2d, Arrest § 80 *et seq.*
[5] 5 Am Jur 2d, Arrest § 85.
[6] 81 Am Jur 2d, Witnesses § 569 *et seq.*
[7] 81 Am Jur 2d, Witnesses §§ 587, 589.
  Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution. 20 ALR2d 1421.
[8] 81 Am Jur 2d, Witnesses §§ 563, 668.
[9] 29 Am Jur 2d, Evidence §§ 644, 645.
[10] 29 Am Jur 2d, Evidence § 885.
  Evidence: admissibility of newspaper article as evidence of the truth of the facts stated therein. 55 ALR3d 663.
[11] 29 Am Jur 2d, Evidence § 180.

fied that she heard loud noises on the street and looked down from her third-floor window of the Granwood. She observed defendant knocking Smith against a window while holding a rifle. She saw Smith fall, get up and run down an alley. She said defendant pursued Smith into the alley and shot him. Defendant and his companion testified that they found Smith, who came into the street and spoke with defendant, that defendant told Smith he was taking him to the police, that Smith reached for his waist in what defendant and his companion took to be an effort to pull a gun and that defendant shot him. Defendant appeals, alleging numerous errors. *Held:*

1. A statute allows a private person to arrest another who has actually committed a felony, even though not in the arrestor's presence. The person making the arrest has a duty to inform the person to be arrested of the intention to arrest and the cause of the arrest, where possible. The use of deadly force must be necessary either to meet deadly force or to prevent escape before it may justifiably be used. The trial court erred in instructing the jury when it limited the justifiable use of deadly force to circumstances where the defendant was confronted with deadly force. It also erred in instructing the jury that deadly force was not justified in attempting a citizen's arrest unless defendant was in fresh pursuit of Smith from the scene of the crime, because it was undisputed that defendant did not immediately set out after Smith and the jury could well have concluded that only a nonforceful arrest of Smith was justified.

2. Evidence of prior misdemeanor convictions may not be used for purposes of general impeachment, but it may be used to show the interest a witness may have in testifying. A criminal defendant is permitted to use evidence of pending charges against a prosecution witness to bring out the witness's bias or interest, if any, affecting the outcome of the case. It was error to prohibit defendant from questioning Debra Bishop concerning misdemeanor charges pending against her.

3. The previous life and character of a witness may be inquired into to elicit facts which may aid the jury in determining what credence they will attach to his testimony. It is the trial court's duty to keep such character examination within reasonable bounds. The trial court erred in allowing the prosecutor to cross-examine defendant concerning: his participation in the management of the store despite a letter from the Liquor Control Commission prohibiting such participation; allegations that defendant was receiving welfare benefits when not entitled to them; allegations that the woman with whom he lived was receiving Aid to Dependent Children; questions involving the

legality of his carrying of a loaded shotgun; and questions concerning illegal drinking in the rear of the store.

4. Silence in the face of accusations of criminal conduct may not be used as evidence, but an exception to this rule exists in cases where a defendant does make a statement and the questions concerning the defendant's silence relate to omissions from the statement.

5. A newspaper article purporting to contain statements of the defendant which differed from his trial testimony was improperly used by the prosecution where the defendant did not recall making the statement and where the reporter did not testify. Use of the statement on retrial, under the same circumstances, would be improper.

6. Prosecutorial argument to the jury suggesting that defendant failed to seek out certain witnesses because he knew that their testimony would be unfavorable to his position was improper. A defendant is under no duty to bring in any witnesses.

Reversed and remanded.

D. C. RILEY, J., concurred, but argues for judicial adoption of a rule of law to the effect that deadly force exercised in attempting a citizen's arrest should be justifiable only where necessary to prevent the flight of an escaping felon from the scene of the crime and is not justifiable once the felon successfully leaves the scene of the crime and the identity of the felon is known to the police.

OPINION OF THE COURT

1. ARREST — CITIZEN'S ARREST — STATUTES.

A statute allows a private person to arrest another who has actually committed a felony, even though not in the arrestor's presence, and the person making the arrest has a duty to inform the person to be arrested of the intention to arrest and the cause of the arrest, where possible (MCL 764.16, 764.20; MSA 28.875, 28.879).

2. HOMICIDE — ARREST — CITIZEN'S ARREST — DEADLY FORCE — INSTRUCTIONS TO JURY.

A trial court, in a trial for homicide where the defense was that the victim died from the lawful exercise of deadly force in making a citizen's arrest and where there was testimony to support an instruction regarding the use of deadly force both in self-defense and as necessary to prevent flight, committed reversible error in instructing the jury when it limited the justifiable use of deadly force to circumstances where the defendant was confronted with deadly force.

3. ARREST — FORCE — DEADLY FORCE.

The use of deadly force must be necessary either to meet deadly force or to prevent a felon from fleeing from an attempted arrest before it may justifiably be used.

4. HOMICIDE — ARREST — CITIZEN'S ARREST — DEADLY FORCE — INSTRUCTIONS TO JURY.

It was error for the trial court in a trial for the homicide of a felon to instruct the jury that deadly force was not justified in attempting a citizen's arrest unless defendant was in fresh pursuit of the felon from the scene of the crime where, because it was undisputed that defendant did not immediately set out after the felon, the jury could have concluded that only a nonforceful arrest of the felon was justified.

5. ARREST — CITIZEN'S ARREST — DEADLY FORCE.

The use of deadly force in making a citizen's arrest is not justified if the person to be arrested is not in fact a felon.

6. WITNESSES — IMPEACHMENT — PRIOR MISDEMEANOR CONVICTIONS.

Evidence of prior misdemeanor convictions may not be used for purposes of general impeachment, but it may be used to show the interest a witness may have in testifying.

7. WITNESSES — CRIMINAL LAW — PENDING CHARGES — ADMISSIBILITY — IMPEACHMENT.

A criminal defendant is permitted to use evidence of pending charges against a prosecution witness to bring out the witness's bias or interest, if any, affecting the outcome of the case.

8. CRIMINAL LAW — WITNESSES — CREDIBILITY — IMPEACHMENT — EVIDENCE — CHARACTER.

The previous life and character of a witness may be inquired into to elicit facts which may aid the jury in determining what credence they will attach to his testimony; however, it is the trial court's duty to keep such character examination within reasonable bounds.

9. CRIMINAL LAW — CONSTITUTIONAL LAW — EVIDENCE — RIGHT TO SILENCE.

Silence in the face of accusations of criminal conduct may not be used as evidence, but an exception to this rule exists in cases where a defendant does make a statement and the questions concerning the defendant's silence relate to omissions from the statement.

10. CRIMINAL LAW — EVIDENCE — NEWSPAPER ARTICLES — STATE-
MENTS OF DEFENDANT.

A newspaper article purporting to contain statements of a defen-
dant differing from his trial testimony may not be used at trial
by the prosecutor where the defendant does not recall making
the statement and where the reporter does not testify.

11. CRIMINAL LAW — PROSECUTORIAL COMMENT — FAILURE TO SECURE
WITNESSES.

Prosecutorial argument to the jury suggesting that a defendant
failed to seek out certain witnesses because he knew that their
testimony would be unfavorable to his position was improper; a
defendant is under no duty to bring in any witnesses.

CONCURRENCE BY D. C. RILEY, J.

12. ARREST — CITIZEN'S ARREST — DEADLY FORCE.

*Deadly force exercised in attempting a citizen's arrest should be
justifiable only where necessary to prevent the flight of an
escaping felon from the scene of the crime and is not justifiable
once the felon successfully leaves the scene of the crime and
the identity of the felon is known to the police.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Prin-
cipal Attorney, Appeals, and *Anne B. Wetherholt,*
Assistant Prosecuting Attorney, for the people.

*Terence R. Flanagan* and *Karla Kendall,* Assist-
ant State Appellate Defenders, for defendant on
appeal.

Before: BRONSON, P.J., and D. C. RILEY and E. A.
QUINNELL,* JJ.

BRONSON, P.J. Defendant was convicted after a
jury trial of first-degree murder, MCL 750.316;
MSA 28.548, and was sentenced to the mandatory
term of life in prison. His motion for a new trial
was denied, and he now appeals as of right.

* Circuit judge, sitting on the Court of Appeals by assignment.

I

Defendant managed the W and W Party Store in Highland Park, which was owned by the woman with whom he lived. On September 24, 1974, at approximately 11:30 p.m., a man identified as Gregory Smith entered the store and asked for the defendant. The clerk informed Smith that defendant was busy but that she would get him in a minute. After subsequent requests to see defendant were answered in the same manner, Smith pulled a gun and robbed the cash register. As he left, he threatened to kill the defendant and also threatened to kill the clerk if she told anyone who it was that had robbed the store. Defendant was in the back of the store at the time and did not witness the robbery.

The police were called and shortly arrived at the store. The clerk knew Smith and through her identification the defendant also realized that it was Smith who had robbed the store. The two police officers who took the report both testified that defendant told them he would kill Smith if he found him before the police did. Defendant set out with some friends to find Smith. In a statement he gave to the police, defendant stated he was seeking Smith to find out why Smith wanted to kill him. He eventually found Smith at the Granwood Hotel on Woodward Avenue in Highland Park and admitted to shooting him at about 2 a.m.

Testimony differed as to the events surrounding the actual shooting. Debra Bishop, a resident of the Granwood, testified for the prosecution. Her testimony was that she looked onto the street from her third-floor window after hearing loud noises on the street. She observed defendant knocking Smith against the windows of the Western Union office

beneath her window while holding a rifle. After
the men were together for about five minutes, she
observed Smith fall, get up, run down Woodward,
and turn into an alley between the hotel and a
Red Barn restaurant. She further testified that
defendant pursued Smith into the alley and then
shot him.[1]

The accounts given by the defendant and by his
companion Cornelius Richards differed from that
given by Debra Bishop. The defendant testified
that he found Smith at the hotel, and that, after
Smith came into the street, they spoke for about
six minutes. The defendant confronted Smith with
the robbery and with the threats made against
defendant and the clerk, and the men moved
toward the alley as they argued. The defendant
testified that, when he told Smith he was going to
take him to the police, Smith called defendant a
"mother fucker" and reached toward his waist for
what defendant believed to be a gun. Richards,
who had been watching all this time, yelled, "Look
out, he has a gun". Defendant then shot Smith,
who stumbled backwards into the alley. Defendant
denied that he planned to kill Smith, stating that
he intended only to bring him into custody. The

---

[1] Approximately six weeks after the trial, Debra Bishop approached
the woman with whom defendant lived and stated that her testimony
at trial had not been truthful. She was persuaded to take this
information to defendant's trial attorney, and did so at counsel's
home on the evening of October 28, 1975. A tape recording was made
of this conversation, and was later transcribed. Her statement con-
flicts in several material aspects from the testimony given at trial.
She denied actually seeing defendant strike Smith on the street, or
seeing Smith run into the alley. She also claimed that she heard
defendant say words to the effect of, "Come with me—police". She
stated that she lied at trial because she didn't want to go to jail, and
because she was told by the police that things would be "all right" if
she cooperated.

Bishop's statement was presented to the trial court in defendant's
motion for a new trial. We note that the trial court may well have
discounted the statement as motivated by sympathy for defendant, or
animosity toward the police.

testimony of Cornelius Richards was similar to that given by defendant.

## II

Defendant did not deny killing Smith but defended on the basis that the killing was justified either as a proper use of deadly force in making an arrest or as necessary in self-defense. On appeal, he attacks the trial court's instructions on the use of deadly force in effecting a valid arrest.

Under the common law, a private citizen was justified in arresting a person whom he reasonably suspected had committed a felony, if in fact a felony had been committed. *People v McLean,* 68 Mich 480, 485; 36 NW 231 (1888), *People v Panknin,* 4 Mich App 19, 27; 143 NW2d 806 (1966). The question is now covered by a statute which allows a private person to arrest another who has actually committed a felony, even though not in the arrestor's presence.[2] The person making the arrest has the duty of informing the person to be arrested of the intention to arrest and the cause of the arrest, with exceptions made for circumstances when it would be impossible to do so.[3]

There was testimony in the instant case to support defendant's claim that his attempted ar-

---

[2] MCL 764.16; MSA 28.875:

"A private person may make an arrest—

"(a) For a felony committed in his presence;

"(b) When the person to be arrested has committed a felony although not in his presence;

"(c) When summoned by any peace officer to assist said officer in making an arrest."

[3] MCL 764.20; MSA 28.879:

"A private person, before making an arrest, shall inform the person to be arrested of the intention to arrest him and the cause of the arrest, except when he is then engaged in the commission of a criminal offense, or if he flees or forcibly resists arrest before the person making the arrest has opportunity so to inform him."

rest of Smith was valid. The next question is whether a private person may lawfully use deadly force in effectuating an otherwise valid arrest of a felon. This question is not controlled by statute in Michigan, so we must look to the common law.

Under the common law, the use of deadly force in making an arrest can be divided into two categories; the use of deadly force when the person making the arrest is met with force from the person who is to be arrested, and the use of deadly force when necessary to prevent the person who is to be arrested from fleeing. The first is generally analyzed under principles of self-defense, although there may be differences such as forgoing the necessity of retreat. See *State v Dunning,* 177 NC 559; 98 SE 530 (1919) (police officer), *People v Ligouri,* 284 NY 309; 31 NE2d 37 (1940) (private citizen). The second is more problematic, and has sparked the most controversy. Pearson, *The Right to Kill in Making Arrests,* 28 Mich L Rev 957 (1930). It also appears that the common law imposed a further distinction between police officers and private persons when the matter escalated beyond the issue of making the arrest to the question of when deadly force could be used to make the arrest. While a private citizen could arrest a person who was *suspected* of committing a felony that *in fact* occurred, deadly force was justified only if the felony actually occurred and the person against whom the force was used was in fact the person who committed the felony.[4] A police officer was justified in acting on the basis of reasonable belief at both levels of inquiry. LaFave & Scott, Criminal Law, § 56, pp 403-405, Anno:

---

[4] Under the statute an arrest is justified only if the person to be arrested has actually committed a felony. See note 2, *supra.* As such, there is presently no further distinction between officers and private persons regarding the use of deadly force in making a valid arrest.

*Private person's authority in making arrest for felony, to shoot or kill alleged felon,* 32 ALR3d 1078, 1083.

In the instant case, there was testimony to support instructions regarding the use of deadly force both in self-defense and as necessary to prevent flight. The trial court's instructions regarding the authority of a private citizen to make an arrest and regarding the killing of another in self-defense appear to us as essentially correct. We find, however, that in other regards the instructions given by the trial court were either in error or misleading.

For example, the trial court instructed:

"A private person, acting on his own account, is justified in using physical force upon another person when and to the extent that he reasonably believes it necessary to effect an arrest or to prevent the escape from custody of an arrested person who he reasonably believes has committed a felony and who in fact has committed that felony. *But he is justified in using deadly physical force for the purpose only when he reasonably believes it necessary to defend himself or a third person from what he reasonably believes to be the use of or imminent use of deadly physical force."* (Emphasis added.)

This instruction ignores the possibility of the use of deadly force where necessary to stop a felon from fleeing. 3 Gillespie, Michigan Criminal Law and Procedure, § 1691, pp 732-733, *People v Gonsler,* 251 Mich 443; 232 NW 365 (1930).[5] By limit-

---

[5] The Court in *Gonsler* approved the following instruction:

"Both officers and private persons seeking to prevent a felon's escape must exercise reasonable care to prevent the escape of the felon without doing personal violence, and it is only where killing him is necessary to prevent this escape, that the killing is justified, and it is for you as jurors to determine from the evidence in the case the existence or absence of the necessity. If a killing is not justifiable, it is either murder or manslaughter." 251 Mich 443, 446-447.

ing the justifiable use of deadly force to circumstances where defendant was confronted with deadly force, the trial court erred reversibly, and this cause must be remanded for a new trial.[6]

The trial court also gave the following instruction:

"If you find that the Defendant, after evaluating all of the evidence, *if you find that the Defendant was in fresh pursuit of an armed felon fleeing from the scene of a crime of robbery armed,* you may conclude that the Defendant reasonably believed it was necessary to arm himself in order to effect a lawful arrest." (Emphasis added.)

There is no requirement that a person be in "fresh pursuit" of a felon *from the scene of the crime* before the use of deadly force is justified. The purpose of permitting force is to enable the arrestor to apprehend the arrestee, so that any question of "fresh pursuit" must be examined in terms of "fresh pursuit" from the attempted arrest, not from the scene of the crime. It is true that before deadly force may be used to stop a felon from fleeing from an attempted arrest, the use of such force must be "necessary". *People v Gonsler, supra.* For example, if an arrest is attempted but the felon flees the attempt, it would probably not be

---

[6] The trial court had previously instructed:

"Homicide is justifiable and not unlawful when necessarily committed in attempting by lawful ways and means to apprehend any person who has actually committed a felony."

This comes much closer to correctly stating the law. Given the fact that this statement followed immediately after the trial court's "fresh pursuit" instruction (discussed in text, *infra)* and was presumably modified by it, and given also that the trial court's later instruction totally negated the justifiable use of deadly force except in self-defense, we cannot say that the instructions, "taken as a whole", adequately apprised the jury of the applicable law. *People v Burkard,* 374 Mich 430, 438; 132 NW2d 106 (1965), *People v Beard,* 78 Mich App 636, 639-640; 261 NW2d 27 (1977), *lv den* 402 Mich 930 (1978).

"necessary" for the arrestor who later finds the felon again to shoot him without notice. In this regard, it is arguable that the arrestor must be in "fresh pursuit" of a felon fleeing *from an attempted arrest.* The effect of the trial court's instruction in the instant case, however, was to inform the jury that deadly force was not justified unless defendant was in fresh pursuit of Smith from the scene of the crime. Because it was undisputed that defendant did not immediately set out after Smith, the jury could well have concluded that only a nonforceful arrest was justified. As the charge was materially misleading, reversal is required. *People v Martin,* 392 Mich 553, 562; 221 NW2d 336 (1974).

It is apparent that the trial court instructed as it did out of a belief that the common law regarding use of deadly force against a felon fleeing a citizen's arrest is outmoded.[7] We appreciate the

---

[7] During the hearing on defendant's motion for a new trial, the following discussion took place between defense counsel and the court:

"THE COURT: * * * [T]hose cases, with rare exception, with rare exception were very old cases which I thought were—that lost their legal significance in 19—whenever we tried this case. By and large many of those cases were nineteenth century cases. They were cases which were handed down when there was a lack of any reasonable ability to communicate with law enforcement officers and it was necessary because of the circumstances, that people might under the circumstances, under the law, be justified in arresting and killing felons. But that annotation, none of the cases in that annotation satisfied me that they were applicable in present day circumstances, particularly in view of the fact that the alternatives that are now available to people who need police service were not available when many of these cases were decided.

"A telephone, for instance, the mobility of the police department generally, the fact that this homicide took place within a block of the police headquarters. Just as a general proposition to suggest that any citizen, private citizen has a right to kill an escaping felon was a proposition that I thought was not the law of the State of Michigan, notwithstanding the citation, and no cases in Michigan were cited to me.

"MR. SUMMER *[defense counsel]:* Well, I never asked the Court to instruct the jury that just because a man has committed a robbery you could kill him, I said if it was necessary in order to prevent his escape. That's the instruction that I requested.

trial court's concern. The common law rule developed in an era when the large majority of felonies were punishable by death, so that the killing of a fleeing felon tended only to hasten the ultimate result. LaFave & Scott, Criminal Law, § 56, p 405, Pearson, *The Right to Kill in Making Arrests,* 28 Mich L Rev 957, 974-975 (1930), *Commonwealth v Chermansky,* 430 Pa 170; 242 A2d 237 (1968). This rationale is, of course, no longer applicable. It is undoubtedly considerations of this sort that have led to changes in the law regarding the use of deadly force by private citizens. Massachusetts, for example, has adopted § 3.07 of the Model Penal Code, which prohibits the use of deadly force by private citizens unless they are assisting a person believed to be authorized to act as a peace officer. *Commonwealth v Klein,* 372 Mass 823; 363 NE2d 1313 (1977).[8] Pennsylvania limits the use of deadly

"THE COURT: And I denied that because I don't think that is the law. And I qualified it by saying that unless the escape or unless the person is in hot pursuit from the scene of the particular robbery, the use of deadly force was not legal. I think to hold otherwise gives everybody a license to kill everybody whenever he finds him."

[8] Section 3.07 of the Model Penal Code (Proposed Official Draft 1962) provides:

"(1) *Use of Force Justifiable to Effect an Arrest.* Subject to the provisions of this Section and of Section 3.09, the use of force upon or toward the person of another is justifiable when the actor is making or assisting in making an arrest and the actor believes that such force is immediately necessary to effect a lawful arrest.

"(2) *Limitations on the Use of Force.*

"(a) The use of force is not justifiable under this Section unless:

"(i) the actor makes known the purpose of the arrest or believes that it is otherwise known by or cannot reasonably be made known to the person to be arrested; and

"(ii) when the arrest is made under a warrant, the warrant is valid or believed by the actor to be valid.

"(b) The use of deadly force is not justifiable under this Section unless:

"(i) the arrest is for a felony; and

"(ii) the person effecting the arrest is authorized to act as a peace officer or is assisting a person whom he believes to be authorized to act as a peace officer; and

"(iii) the actor believes that the force employed creates no substantial risk of injury to innocent persons; and

force to violent felonies, and enumerates some of the felonies that meet this standard. *Commonwealth v Chermansky, supra.*

Despite the fact that some jurisdictions have cut back on the justifiable use of deadly force, many others have maintained the common law rule, and there is good reason for doing so. The fact remains that the police cannot be everywhere they are needed at once. The occasion may arise where the private citizen is confronted with the choice of attempting a citizen's arrest or letting the felon escape. In order to make the citizen's arrest, it is regrettable, but sometimes necessary, to make use of deadly force. The common law in Michigan recognizes this but still stops far short of granting the private citizen a license to hunt down and kill those suspected of committing a felony. The use of deadly force is not justified if the person to be arrested is not *in fact* a felon. Additionally, and most importantly, the use of deadly force must be *necessary* either to meet deadly force or to prevent the felon's escape. Elimination or severe curtailment of the citizen's justifiable use of deadly force would ignore the practical limitations on the ability of law enforcement authorities to arrest every felon. The present rule in Michigan, on the other hand, recognizes that the citizen's use of deadly force is sometimes necessary, while at the same time it reasonably limits the justifiable use of such force. It should be clear that we are expressing no opinion as to whether defendant's conduct was justifiable under the present rule. We hold only that he was entitled to have his conduct measured

"(iv) the actor believes that:
"(1) the crime for which the arrest is made involved conduct including the use or threatened use of deadly force; or
"(2) there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed."

by the jury under the rules existing at the time of his acts. *Commonwealth v Klein, supra,* 832-834. See *Marks v United States,* 430 US 188; 97 S Ct 990; 51 L Ed 2d 260 (1977), *Bouie v Columbia,* 378 US 347; 84 S Ct 1697; 12 L Ed 2d 894 (1964).

Because retrial may be had in this case, we believe it appropriate to briefly address some of the other errors raised on appeal.

## III

Defendant also contends the trial court erred in refusing to allow cross-examination of the prosecution's chief witness, Debra Bishop, concerning her prior misdemeanor convictions and pending charges.

### A. *Prior Misdemeanor Convictions*

The Supreme Court held in *People v Renno,* 392 Mich 45, 55; 219 NW2d 422 (1974), that evidence of misdemeanor convictions could not be used for the purposes of general impeachment. See, also, MRE 609(a)(1). While evidence of prior misdemeanor convictions may be used to show the interest a witness may have in testifying, see *People v Crutchfield,* 62 Mich App 149, 154-155; 233 NW2d 507 (1975), *lv den* 395 Mich 758 (1975),[9] we do not perceive in what manner Debra Bishop's prior misdemeanor convictions related to her interest in testifying, and, accordingly, conclude that their exclusion was proper.

### B. *Pending Charges*

Generally, evidence of arrests not resulting in convictions are inadmissible to impeach the general credibility of a witness. *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193 (1973). Unlike the

---

[9] See, generally, MCL 600.2158-600.2159; MSA 27A.2158-27A.2159.

situation involving prior misdemeanor convictions, however, the fact that a prosecution witness has charges pending is particularly relevant to the issue of the witness's interest in testifying, and it has been held that evidence of arrests not resulting in conviction are admissible for this purpose. *People v Torrez,* 90 Mich App 120, 124-125; 282 NW2d 252 (1979), *People v Harrington,* 76 Mich App 118; 256 NW2d 52 (1977), *lv den* 401 Mich 852 (1977), *People v Sesson,* 45 Mich App 288; 206 NW2d 495 (1973), *lv den* 389 Mich 801 (1973). The defendant does not have to first demonstrate that some sort of deal exists before impeaching the witness in this manner; the cross-examination is proper in an attempt to elicit an interest that may exist. *People v Torrez, supra,* 124.

Accordingly, the trial court erred in limiting cross-examination in this regard and if defendant is retried the questions should be allowed. Evidence concerning the witness's status as a prostitute or drug addict will, in the event of retrial, be governed by MRE 608(b).

IV

Defendant next argues that the trial court erred in allowing the prosecutor to cross-examine him concerning specific allegations of misconduct unrelated to the charged offense. Specifically, defendant alleges the prosecution's cross-examination improperly inquired into the following areas:

(1) his participation in the management of the store despite a letter from the Liquor Control Commission prohibiting such participation;

(2) allegations that defendant was receiving welfare benefits when not entitled to them;

(3) allegations that the woman with whom he lived was receiving Aid to Dependent Children;

(4) questions involving the legality of his carrying of a loaded shotgun;

(5) questions concerning illegal drinking in the rear of the store.

These questions and insinuations were highly prejudicial, and at best of little relevance to his credibility or to his guilt or innocence of the charged offense. Nor could the questions be said to have been necessary to contradict statements made by the defendant on direct examination. Defendant had not testified that he was living off the profits of the store but had instead claimed that his chief means of support was supplemental security insurance benefits related to a medical disability. Similarly, he never claimed that the woman with whom he lived did not receive welfare benefits. That carrying a loaded shotgun in a car is illegal does not contradict the defendant's statement that he did not carry a handgun instead because it would have been illegal to do so. While there is a question as to whether defendant ever claimed to have legal ownership of the party store, his legal status in the store does not alter his contentions that he was associated with its control and was upset by the robbery. The use of unproven insinuations of welfare fraud was also improper.

It is the duty of the trial court to keep character examination within reasonable bounds. In the instant case those bounds were exceeded by the introduction of irrelevant and unproven insinuations. See *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977). The examination was particularly prejudicial when compared with the narrowly limited cross-examination of Debra Bishop.

Defendant also attacks the use of extrinsic evidence to impeach his responses on some of these collateral points, specifically the use of a letter from the Liquor Control Commission and a medical assistance card. This was also error. *People v Bennett,* 393 Mich 445, 449-450; 224 NW2d 840 (1975).

V

Defendant also alleges his right to post-arrest silence was violated when the prosecution questioned one of the arresting officers concerning the fact that when arrested defendant made no mention of having attempted a citizen's arrest. It was argued that this silence was inconsistent with defendant's defense at trial.

In order to protect the right of post-arrest silence, silence in the face of an accusation of criminal conduct cannot be used as evidence. *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). An exception to this rule exists in cases where defendant does make a statement and the questions concerning defendant's silence relate to omissions from the statement. *People v Richendollar,* 85 Mich App 74, 82; 270 NW2d 530 (1978), *lv den* 405 Mich 820 (1979), *People v Baldwin,* 74 Mich App 700, 709-712; 254 NW2d 619 (1977), *rev'd on other grounds,* 405 Mich 550; 275 NW2d 253 (1979). This was the situation in the instant case, and the questions were accordingly proper.

VI

Defendant also objects to the prosecution's attempted use of a newspaper article apparently containing a statement made by the defendant to a reporter that differed somewhat from the defen-

dant's testimony at trial. Defendant did not recall making the statement, and the reporter did not testify. Although the statement was not admitted into evidence, its substance was placed on the record through the prosecution's questions. Use of this statement on retrial, under the same circumstances, would be improper. *People v Terry,* 80 Mich App 299, 304-306; 263 NW2d 352 (1977).

## VII

We lastly address ourselves to one aspect of the prosecution's closing argument attacked by defendant. Defendant had at one point served prosecution subpoenas on two witnesses at the request of the prosecutor. Defense counsel brought this fact out on direct examination of his client in an apparent attempt to show the extent of defendant's cooperation with the authorities. On cross-examination, the prosecution was allowed to question defendant concerning his failure to locate other witnesses, specifically, two men who were near the scene of the shooting but unknown to defendant. In the argument to the jury, the prosecutor again raised the issue and suggested that defendant did not bring in the two men because he knew their testimony would be unfavorable to his position.

We find this argument improper. The defendant is under absolutely no duty to seek out and produce witnesses for the prosecution. This is not changed by the fact that defendant volunteered to locate and serve subpoenas on two particular witnesses. In so doing, defendant cannot be said to have assumed a general responsibility for hunting down the prosecution's witnesses. The prosecutor's remarks suggested to the jury that defendant's failure to seek out certain witnesses meant he was

hiding something. Because defendant was under no duty to bring in any witnesses he cannot be faulted for not doing so, and the inferences suggested by the prosecutor were improper.

Reversed and remanded.

E. A. QUINNELL, J., concurred.

D. C. RILEY, J., *(concurring)*. I concur substantially with the excellent opinion written by Judge BRONSON. However, I write separately to acknowledge what I perceive to be the trial court's reluctance to endorse uncontrolled vigilantism. While I am persuaded that "fresh pursuit" is not required under Michigan law, I am equally persuaded that "delayed pursuit" is a mischaracterization of the facts here. Further, I question whether "fresh pursuit" or "delayed pursuit" is even the issue where, as here, the felon is known to the complainant, police and to defendant (who has told police he will kill felon if he finds him before arrest). The facts here are simply not supportive of a shooting "justified" to prevent a fleeing felon's escape.

I urge that we consider judicial adoption of limits upon a citizen's authority to use deadly force in situations such as this, *i.e.,* deadly force is justifiable only where necessary to prevent the flight of an escaping felon and that once the felon successfully leaves the scene of the crime there is no longer the compelling (justifiable) need for a citizen to hunt the felon down, prepared to use deadly force.

I stress again, *this* felon's identity was known to the police and they were the proper instrumentality to effect the arrest. This is *not* a case, for example, where an escaped felon, known only to the victim on sight, is seen on the street and (delayed) pursuit ensues.