PEOPLE v SMITH

Docket No. 79721. Submitted November 13, 1985, at Detroit.—Decided December 17, 1985.

Defendant, Dwayne Smith, was convicted following a bench trial in the Recorder's Court for the City of Detroit of second-degree murder and possession of a firearm in the commission of a felony. The trial court, Thomas E. Jackson, J., sentenced defendant to imprisonment for from 36 to 140 months for the murder conviction and 2 years for the felony-firearm conviction. The facts indicate that, prior to trial, defendant filed a motion in the trial court to quash the information or for reduction of the charge and to suppress his confession. The court granted defendant's motion and reduced the charge to second-degree murder. Following an evidentiary hearing, the court ordered that the confession be suppressed. The people appealed to the Court of Appeals and the order was vacated and remanded to the lower court for reconsideration of the factual issue of the voluntariness of the confession. The lower court then again found that the confession was involuntary and ordered its suppression. The Court of Appeals then granted the people leave to appeal and reversed the lower court. 124 Mich App 723 (1983). The Supreme Court then denied defendant's application for leave to appeal. 417 Mich 1068 (1983). The trial ensued and defendant was convicted of second-degree murder and felony-firearm. Defendant appeals. *Held:*

1. The trial court did not abuse its discretion in granting the

REFERENCES

Am Jur 2d, Arrest §§ 34-36.

Am Jur 2d, Criminal Law §§ 408-432.

Am Jur 2d, Homicide §§ 44, 53, 267.

Am Jur 2d, Searches and Seizures §§ 46-53.

Private person's authority, in making arrest for felony, to shoot or kill alleged felon. 32 ALR3d 1078.

Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of, arrest and search. 19 ALR3d 727.

See also the annotations in the ALR3d/4th Quick Index under Homicide; Searches and Seizures.

motion to reduce the charge to second-degree murder. There was sufficient evidence presented to support that charge.

2. Questions of fact regarding whether the decedent was a fleeing felon and whether the use of force and the amount of force used was justified were properly left for the trier of fact.

3. The facts indicate that defendant gave the police valid consent to enter his apartment for the purpose of arresting the defendant.

4. The trial court's findings do not demonstrate that the burden of proof was shifted to the defendant. The record supports the trial court's findings that the deadly force used by the defendant was not necessary.

Affirmed.

1. CRIMINAL LAW — APPEAL — PRELIMINARY EXAMINATION.

A magistrate's decision to bind a defendant over for trial will be reversed on appeal only if there has been an abuse of discretion.

2. CRIMINAL LAW — PRELIMINARY EXAMINATION.

The primary function of a preliminary examination is to determine if a crime has been committed and, if so, if there is probable cause to believe that the defendant committed it; positive proof of guilt is not required but there must be evidence of each element of the offense or evidence from which the elements can be inferred; the examining magistrate is required to bind the defendant over for trial if it appears at the conclusion of the preliminary examination that a felony has been committed and probable cause exists to believe that the defendant committed it (MCL 766.13; MSA 28.931).

3. HOMICIDE — SECOND-DEGREE MURDER.

The elements of second-degree murder are (1) that a death occurred, (2) that it was caused by the defendant, (3) that the killing was done with malice, and (4) without justification or excuse (MCL 750.317; MSA 28.549).

4. HOMICIDE — SECOND-DEGREE MURDER — MALICE.

Malice may be inferred from the defendant's use of a deadly weapon for purposes of determining whether sufficient evidence is presented to bind a defendant over on a charge of second-degree murder (MCL 750.317; MSA 28.549).

5. HOMICIDE — PRELIMINARY EXAMINATION — FACT QUESTIONS.

The question of justification or excuse for a homicide is not a question to be decided by the examining magistrate at the

preliminary examination of a defendant but rather is within the province of the jury or the trier of fact at trial.

6. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — FOURTH AMENDMENT.

The Fourth Amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home for the purpose of making a routine felony arrest where exigent circumstances are absent; the Fourth Amendment does not pertain to a consensual entry (US Const, Am IV).

7. SEARCHES AND SEIZURES — CONSENT.

Conduct by a defendant may be sufficient to constitute a valid consent by the defendant for the police to enter the defendant's home without a warrant for the purpose of arresting the defendant, even in the absence of specific warnings by the police that the defendant had the right to require a warrant and refuse such entry without a warrant.

8. CRIMINAL LAW — ARREST — PRIVATE CITIZENS — DEADLY FORCE.

A private citizen in Michigan is justified in arresting a person who he reasonably suspects has committed a felony if in fact a felony has been committed; Michigan common law also permits a private person to use deadly force to effectuate an arrest if in fact the felony actually occurred and if the person against whom the force is used was the person who committed the felony; the only limitations on a private citizen's right to use deadly force are: that the person against whom the force is used is a felon and, most importantly, the use of deadly force must be necessary either to meet deadly force or to prevent the felon's escape (MCL 764.20; MSA 28.879).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Mark J. Kriger,* for defendant on appeal.

Before: BEASLEY, P.J., and V. J. BRENNAN and CYNAR, JJ.

PER CURIAM. Following a bench trial held in Detroit Recorder's Court, defendant was convicted

of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2). Prior to trial, defendant filed a motion to quash the information or for reduction of the charge and to suppress his confession. The lower court granted defendant's motion to reduce the charge and the charge was reduced to second-degree murder. An evidentiary hearing on the motion to suppress was held on April 23, 1982, after which the court ordered that the confession be suppressed. The people appealed from the court's order to this Court and the order was vacated and remanded to the lower court for reconsideration of the factual issue of voluntariness of the confession. In a written opinion dated August 19, 1982, the lower court again found that the confession was involuntary and ordered its suppression. This Court granted leave to appeal and reversed the lower court. See *People v Smith*, 124 Mich App 723; 335 NW2d 137 (1983). The Supreme Court denied defendant's application for leave to appeal, *People v Smith*, 417 Mich 1068 (1983). A trial ensued and the defendant was convicted of second-degree murder and felony-firearm. Defendant was sentenced to imprisonment for from 36 to 140 months for the murder conviction and 2 years for the felony-firearm conviction. Defendant now appeals as of right.

The record in this case reveals that the following events took place at defendant's apartment building on November 3, 1981. Defendant heard a loud bang resembling a foot kicking on the door to his apartment. Defendant opened the door and observed decedent, Gary Stringfield, standing outside. Stringfield ran down the stairway and defendant followed him with a gun. Both men exited from the apartment building. Stringfield attempted to reenter the building and defendant

yelled for him to stop. When Stringfield failed to comply, defendant fired three shots into Stringfield's head. Defendant returned to his apartment and called Daryl Carter and eventually went to his mother's house and smashed the gun with a sledge hammer. Defendant then discarded the gun in an alley.

Stringfield's body was found by Detroit Police Officer James Irons. EMS was notified and Stringfield was taken to the hospital where he died.

The murder remained unsolved until February, 1982, when Police Officer David Kramer received an anonymous tip informing him that Carter had knowledge regarding the slaying. Carter subsequently made a statement to the police which indicated that Carter went to defendant's apartment on the night in question. Upon arrival at the apartment building, Carter observed a body of a black man lying on the ground by the back door. There was blood on the ground. When Carter arrived at defendant's apartment, defendant informed him that he had shot someone.

The testimony of the assistant medical examiner indicates that Stringfield died as a result of three gunshot wounds to the head which were fired at contact.

Defendant argues that the trial court erred in refusing to quash the information or reduce the charge of first-degree murder to manslaughter.

Because the trial court granted defendant's motion to reduce the charged offense to second-degree murder, we must determine whether the trial court abused its discretion in doing so. See *People v Talley,* 410 Mich 378; 301 NW2d 809 (1981); *People v Jones,* 126 Mich App 191; 336 NW2d 889 (1983) (a magistrate's decision to bind defendant over will only be reversed if there has been an abuse of discretion).

The primary function of a preliminary examination is to "determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it". *People v Duncan,* 388 Mich 489, 499; 201 NW2d 629 (1972). Positive proof of guilt is not required but there must be evidence of each element of the offense or evidence from which the elements can be inferred. *People v Doss,* 406 Mich 90; 276 NW2d 9 (1979), citing *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976), *lv den* 397 Mich 848 (1976). If it appears at the conclusion of the preliminary examination that a felony has been committed and probable cause exists to believe defendant committed it, the examining magistrate is required to bind defendant over for trial. MCL 766.13; MSA 28.931; *Doss, supra.*

The elements of second-degree murder are (1) that a death occurred, (2) that it was caused by the defendant, (3) that the killing was done with malice, and (4) without justification or excuse. *People v Nash,* 110 Mich App 428, 452; 313 NW2d 307 (1981), *aff'd in part* 418 Mich 196; 341 NW2d 439 (1983); CJI 16:3:01.

The prosecution presented evidence that Stringfield died as a result of three bullet wounds to the head and that the wounds were inflicted by the defendant. This evidence was sufficient to establish probable cause that a crime had been committed and that the defendant committed it. The evidence was also sufficient to bind defendant over on a charge of second-degree murder since malice may be inferred from the use of a deadly weapon. *Wayne County Prosecutor v Recorder's Court Judge,* 92 Mich App 119, 123; 284 NW2d 507 (1979); *Oster, supra.*

Defendant further argues that, because the prosecution relied solely on defendant's statement to

establish the elements of the offense, there was no evidence to negate defendant's claim of justification and at most defendant could only be bound over for voluntary manslaughter. The question of justification or excuse is not a question to be decided by the examining magistrate but rather is within the province of the jury or trier of fact. *Oster, supra.* In this case, there was evidence both supporting and negating the defense of justification. Even assuming, *arguendo,* that deadly force may be used to prevent the escape of a fleeing felon,[1] the instant case presented a question of fact regarding whether the decedent was a fleeing felon and whether the use of force and amount of force used was justified. These questions of fact were properly left for the trier of fact. We therefore decline to reverse on this point.

Defendant argues that a consensual entry requires that the arresting officers inform the defendant of the nature and purpose of their entry.

In *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980), the United States Supreme Court held that absent exigent circumstances the Fourth Amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home for the purpose of making a routine felony arrest. It is uncontested by the people that the police entered defendant's home for the express purpose of making the arrest and that the arrest was without a warrant. Neither do the people argue that any exigent circumstances required the entry without a warrant.

---

[1] See *People v Whitty,* 96 Mich App 403; 292 NW2d 214 (1980), *lv den* 409 Mich 915 (1980), discussed *infra.* Cf., *Tennessee v Garner,* 471 US —; 105 S Ct 1694; 85 L Ed 2d 1 (1985), where a Tennessee statute which permitted deadly force to be used to prevent the escape of a fleeing felon was held unconstitutional absent a showing of probable cause to believe that the felon posed a significant threat to the arresting officer.

Rather, the people contend that defendant consented to the entry and thus the arrest was valid. The Fourth Amendment does not pertain to a consensual entry.

Defendant contends that an entry can be deemed consensual only if an individual is informed by the police of his right to require an arrest warrant or, at a minimum, requires that they inform the citizen that they are present for the purpose of effectuating an arrest. We have previously held that a defendant's conduct, even absent the specific warnings by the police, may be sufficient to constitute a valid consent. In *People v Brown,* 127 Mich App 436, 441; 339 NW2d 38 (1983), *lv den* 419 Mich 896 (1984), we rejected the suggestion that defendant had to be specifically informed of his right to require a warrant and refuse the search. The *Brown* Court stated that it is the totality of the circumstances rather than the recitation of specific warnings by police officers which determines whether the consent was valid.

In the present case, defendant admitted that he knew that the police were coming to his home for the purpose of arresting him. The police officers knocked on defendant's door and defendant allowed the police to enter his apartment. We conclude that the consent to enter was valid in this case.

Finally, defendant argues that the trial court impermissibly shifted the burden of proof and misstated the law regarding apprehension of a fleeing felon. We disagree.

In Michigan, a private citizen is justified in arresting a person who he reasonably suspects has committed a felony if in fact a felony has been committed. *People v Whitty,* 96 Mich App 403, 410; 292 NW2d 214 (1980), *lv den* 409 Mich 915 (1980); MCL 764.20; MSA 28.879. Michigan com-

mon law also permits a private person to use deadly force to effectuate an arrest if in fact the felony actually occurred and if the person against whom the force was used was the person who committed the felony. *Whitty, supra,* p 411. The *Whitty* Court specifically rejected the trial court's jury instruction that deadly force could be used only if the actor reasonably believed he was in imminent danger of deadly physical force and affirmed the common-law rule that deadly force could be used when necessary to stop a felon from fleeing. Under *Whitty,* the only limitations on a private citizen's right to use deadly force are that the person in fact is a felon and, "most importantly, the use of deadly force must be *necessary* either to meet deadly force or to prevent the felon's escape". *Id.,* p 416. (Emphasis in original.)

In the present case, defendant admitted that he killed Stringfield but claimed that the homicide was justified on the grounds that it was necessary to prevent Stringfield's escape. The court made the following findings when it considered this claim:

"First of all, let's look at the argument that is made here, and it's part of the defense that there was a fleeing-felony *[sic]*. Even taking that Mr. Stringfield had in fact kicked the door of the defendant, there is no indication that there was in fact—or this court is not convinced that that shows that there was in fact a felony being committed, or an intent of a felony being committed by Mr. Stringfield.

"I say that, one, because the kicking of a door can have a lot of different kind of reasons for doing something like that. Particularly when I look again at the testimony that the defendant made here that on other occasions Mr. Stringfield had rang the doorbell, knocked on the door, rang the doorbell again, etcetera, while the defendant was home, and there's no indication if there was in fact a—Mr. Stringfield trying to

establish whether the defendant was home in order to break and enter that particular apartment.

"It would seem likely in terms of common sense and experience that if he rang the doorbell, knocked on the door, and continued to ring the doorbell without a response, that apparently he would have made some move then, if he wanted to break into it. But there is no indication that anything else was done in order to do that.

"So even if there was in fact, as stated by the defendant, Mr. Stringfield did kick the door in, or kick the door on that particular night, the question is whether or not even in doing that, his actions in response to that were sufficient to remove this matter to that of manslaughter * * * I do find that there was a homicide committed, and that there was no justification or excuse for it."

Hence, the trial court concluded that Stringfield had not committed a felony and was therefore not a fleeing felon. Defendant contends that the above-quoted remarks indicate that the court impermissibly shifted the burden of proof by looking to defendant to supply a justiciable motive or explanation for his conduct. Our review of the record convinces us that the court, acting as the trier of fact, was merely commenting on the evidence. The court never stated that defendant failed to prove his claim but rather that the evidence presented, including the nature and number of gunshot wounds coupled with defendant's own statement, did not support a fleeing-felon defense. We do not believe that the court's findings demonstrate that the burden of proof was shifted to defendant.

The court essentially found that the deadly force used by defendant was not necessary. The court stated that "defendant apparently knew exactly where the * * * deceased * * * lived * * * and that if there was in fact an attempt to break into the apartment, I can see no reason why the police

could not have been called". The trial court also stated that there was evidence that an attempted break-in occurred but that such evidence was not sufficient to support a finding of reasonable provocation necessary to reduce the charge to manslaughter. The record supports the trial court's findings and we decline to reverse on this point.

Affirmed.