## PEOPLE v COUCH

Docket No. 101936. Submitted April 8, 1988, at Detroit. Decided April 3, 1989. Leave to appeal applied for.

Archie L. Couch, Jr., observed a man stealing the radio from his automobile which was parked in the parking lot of the office in which he worked. Couch drew his licensed concealed weapon and told the thief to get out of the automobile and to accompany him while he called the police. The thief got out of the automobile and lunged at Couch. Couch fired a shot which missed. The thief turned and ran, and Couch fired two more shots, both of which struck the thief in the back, the wounds ultimately resulting in the death of the thief. Couch was arrested and charged with manslaughter and possession of a firearm during the commission of a felony. Defendant moved in Recorder's Court of Detroit to quash the information on the basis that, at common law, Michigan citizens could use deadly force to effectuate an arrest of a fleeing felon. The prosecutor opposed the motion and asked the court to rule that a person in defendant's position could only use deadly force if he reasonably believed that there was a physical threat to himself or others. The court, James E. Roberts, J., denied both the motion to quash and the prosecutor's request. The prosecutor appealed by leave granted.

The Court of Appeals *held:*

Since a police officer may now use deadly force to effect the arrest of a fleeing felon only where the officer reasonably believes that the felon poses a threat of serious physical harm to either himself or others, and since the common-law rule is based on the rationale that the private citizen stands in the shoes of the police, defendant would have been justified in using deadly force only if he reasonably believed that the thief posed a threat of serious harm to himself or others. It was error for the trial court to hold that deadly force could be used to effect the arrest of any fleeing felon.

Reversed.

### REFERENCES

Am Jur 2d, Arrest § 85.

Private person's authority, in making arrest for felony, to shoot or kill alleged felon. 32 ALR3d 1078.

ARREST — CITIZEN'S ARREST — DEADLY FORCE.

> A private citizen, in making a citizen's arrest, may use deadly force to prevent a felon from fleeing only where the citizen has a reasonable belief that the felon poses a threat of serious physical harm to that citizen or to other citizens; accordingly, if a private citizen uses deadly force where he does not have a reasonable belief that the felon poses a serious threat to himself or others, such citizen may be subject to criminal prosecution as a result of using excessive force in effecting the citizen's arrest (MCL 764.16[a]; MSA 28.875[a]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *George E. Ward,* Chief Assistant Prosecuting Attorney, for the people.

*James A. Waske* and *Sharon A. Payne,* and *Kenneth R. Sasse,* for defendant.

Before: HOLBROOK, JR., P.J., and MACKENZIE and N. A. BAGULEY,* JJ.

N. A. BAGULEY, J. The prosecutor appeals by leave granted the decision of the Detroit Recorder's Court that *People v Whitty,* 96 Mich App 403; 292 NW2d 214 (1980), is controlling in the instant case rather than *Tennessee v Garner,* 471 US 1; 105 S Ct 1694; 85 L Ed 2d 1 (1985). We reverse.

On October 15, 1986, at approximately 1:10 P.M., defendant was in his office in Warren, Michigan, when he heard a piercing sound, which he recognized as the burglar alarm on his 1986 Cadillac Seville automobile. He left the office building and walked to the parking lot where he saw a man, later identified as Alphonso Tucker, Jr., sitting in the middle of the front seat of defendant's car. The driver's window of defendant's vehicle had been broken out, with glass shards littering the parking

* Circuit judge, sitting on the Court of Appeals by assignment.

lot. Tucker was bent forward, in the process of stealing the car's radio.

Defendant drew his licensed concealed weapon, a .38 caliber revolver, walked to the rear of the car, held the gun in the air, and said, "Get out of the car and go with me so that I can call the police." Tucker slid over to the passenger door of the car, left the car, and said, "Okay, man, don't shoot." Defendant instructed Tucker to accompany him so he could call the police. Tucker then lunged toward defendant, and defendant fired a single shot. This shot did not strike Tucker. Tucker then began running away, and defendant fired two more shots from a distance of twenty to thirty feet, striking Tucker twice in the back. Tucker later died from the two gunshot wounds. Defendant returned to his office, summoned the police, and gave them a full statement concerning the incident.

Defendant was arrested and charged with manslaughter, MCL 750.329; MSA 28.561, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant moved to quash the information, claiming that pursuant to Michigan common law citizens can use deadly force to effectuate the arrest of a fleeing felon and, accordingly, defendant had a complete defense to these charges. The prosecutor opposed defendant's motion and in limine requested that the court determine whether the United States Supreme Court decision in *Garner, supra,* applied to this action and rendered the defendant's use of deadly force unreasonable. The Recorder's Court judge found that *Whitty, supra,* was controlling rather than *Garner.* The prosecutor's request for a jury instruction reflecting the limitation established by *Garner* was denied without prejudice, and defendant's motion to quash

was denied. Trial was stayed pending the instant appeal to this Court.

By statute in Michigan a private citizen can make an arrest for a felony committed in his presence. MCL 764.16(a); MSA 28.875(a). Under the common law, the allowable use of deadly force by a private citizen in making a valid arrest can be divided into two categories: the use of deadly force when the person making the arrest is met with force from the person who is to be arrested, and the use of deadly force when necessary to prevent the person who is to be arrested from fleeing. *Whitty, supra,* p 411. See also *Werner v Hartfelder,* 113 Mich App 747; 318 NW2d 825 (1982); *People v Smith,* 148 Mich App 16; 384 NW2d 68 (1985).

The *Whitty* Court examined the common-law rule which allows a private citizen to use deadly force to prevent a felon from escaping. The *Whitty* Court stated:

> The common law rule developed in an era when the large majority of felonies were punishable by death, so that the killing of a fleeing felon tended only to hasten the ultimate result. LaFave & Scott, Criminal Law, § 56, p 405, Pearson, *The Right to Kill in Making Arrests,* 28 Mich L Rev 957, 974-975 (1930), *Commonwealth v Chermansky,* 430 Pa 170; 242 A2d 237 (1968). This rationale is, of course, no longer applicable. It is undoubtedly considerations of this sort that have led to changes in the law regarding the use of deadly force by private citizens. Massachusetts, for example, has adopted § 3.07 of the Model Penal Code, which prohibits the use of deadly force by private citizens unless they are assisting a person believed to be authorized to act as a peace officer. *Commonwealth v Klein,* 372 Mass 823; 363 NE2d 1313 (1977). Pennsylvania limits the use of deadly force to violent felonies, and enumerates some of the felo-

nies that meet this standard. *Commonwealth v Chermansky, supra.*

Despite the fact that some jurisdictions have cut back on the justifiable use of deadly force, many others have maintained the common law rule, and there is good reason for doing so. The fact remains that the police cannot be everywhere they are needed at once. The occasion may arise where the private citizen is confronted with the choice of attempting a citizen's arrest or letting the felon escape. In order to make the citizen's arrest, it is regrettable, but sometimes necessary, to make use of deadly force. The common law in Michigan recognizes this but still stops far short of granting the private citizen a license to hunt down and kill those suspected of committing a felony. The use of deadly force is not justified if the person to be arrested is not *in fact* a felon. Additionally, and most importantly, the use of deadly force must be *necessary* either to meet deadly force or to prevent the felon's escape. Elimination or severe curtailment of the citizen's justifiable use of deadly force would ignore the practical limitations on the ability of law enforcement authorities to arrest every felon. [*Whitty, supra,* pp 415-416.]

The *Whitty* Court upheld the existing common-law rule, but supplied it with a new rationale. A private citizen may use deadly force to prevent a fleeing felon from escaping because there are "practical limitations on the ability of law enforcement authorities to arrest every felon." *Id.*

In 1985, the United States Supreme Court held in *Tennessee v Garner, supra,* that where a police officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not unconstitutionally unreasonable to prevent the escape by using deadly force." *Garner, supra,* 471 US 11. The *Garner* Court held that the Fourth Amendment to the United States Constitution prohibited a police

officer from using deadly force to prevent a felon from fleeing unless the officer had probable cause to believe the felon posed a threat to the officer or others. If the defendant in the instant case were a police officer, *Garner* would be controlling.

Defendant is a private citizen, not a police officer. The Fourth Amendment was intended as a restraint upon the activities of sovereign authority and was not intended to be a limitation upon other than governmental agencies. *Burdeau v McDowell,* 256 US 465, 475; 41 S Ct 574; 65 L Ed 1048 (1921). A panel of this Court in *People v Holloway,* 82 Mich App 629; 267 NW2d 454 (1978), held that the Fourth Amendment restraints on the activities of government officers did not extend to searches by private security guards. If the actions of private security guards are not constrained by the Fourth Amendment, then obviously private citizens' actions are not bound by the Fourth Amendment. The Fourth Amendment is not controlling on actions of private citizens and, accordingly, *Garner* does not directly control the instant case. However, the *Garner* decision does prompt us to reexamine the result reached by this Court in *Whitty.*

*Whitty* upheld the common-law rule allowing a private citizen to employ deadly force so as to prevent a felon from fleeing because, essentially, in that situation a private citizen is playing the part of a police officer. But, *Garner* changed when a police officer is allowed to use deadly force to prevent a felon from escaping. Therefore, employing the *Whitty* rationale that a private citizen, at times, stands in the shoes of a police officer, we hold that a private citizen may only use deadly force to prevent a felon from fleeing where the citizen has a reasonable belief that the felon poses a threat of serious physical harm to that citizen or to other citizens. To the degree that this decision

conflicts with *Whitty,* we disagree with *Whitty* and do not apply it in this case.

We are adopting a new standard to determine if a private citizen's use of deadly force to prevent a felon from escaping is reasonable. Although this is a new approach for this state, it's application has been foreshadowed by other panels of this Court. See the dissent to *Werner v Hartfelder,* 113 Mich App 747, 758; 318 NW2d 825 (1982); *Guider v Smith,* 157 Mich App 92, 108; 403 NW2d 505 (1987) (questioning the viability of the common law rule in light of *Tennessee v Garner*); *People v Coons,* 158 Mich App 735, 739; 405 NW2d 153 (1987) ("We will not give defendant permission to use deadly force in a situation where it would be denied to a law enforcement officer having broader powers to effect an arrest."); *Washington v Starke,* 173 Mich App 230; 433 NW2d 834 (1988) (holding as unconstitutional the common-law rule that a police officer can use deadly force to prevent a felon from fleeing).

Defendant argues that *Tennessee v Garner, supra,* should not be applied retroactively so as to apply to the instant case. We disagree. We first note that the *Garner* decision was handed down on March 27, 1985, and the instant crime occurred on October 15, 1986. Second, we follow *Washington v Starke, supra,* which held that the *Garner* decision applies retroactively to a shooting that occurred in 1982. We are not troubled by applying *Garner* to the instant case.

We have enunciated a new standard of reasonableness to be applied when a private citizen employs deadly force to prevent a felon from fleeing. A private citizen can use deadly force to stop the escape of a felon where it is reasonable for the citizen to believe that the felon poses a threat of serious physical harm either to that citizen or to

others. We do not draw any conclusion as to whether the actions of defendant in this case were reasonable. We reverse the trial court's ruling that *Whitty* is controlling over the instant case as opposed to *Garner.*

Reversed.