*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 30, 2020

Plaintiff-Appellee,

v

No. 345842
Jackson Circuit Court
LC No. 16-004958-FC

TRACY LEE LAWRENCE,

Defendant-Appellant.

Before: BORRELLO, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant was convicted by a jury of two counts of second-degree murder, MCL 750.317, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him to 228 to 480 months' imprisonment for each of the murder convictions and 2 years' imprisonment for the felony-firearm conviction, with the murder sentences to run consecutively to the felony-firearm sentence. Defendant now appeals as of right.[1] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The evidence at trial revealed that on the morning of June 8, 2016, defendant shot and killed two men while they were outside of his residence. Defendant and his wife own adjacent parcels of property in Jackson County. Defendant's main residence sits on the parcel where the killing occurred and on the other parcel, defendant and his wife store a mobile home and a travel trailer. Defendant testified that on June 8, 2016, he woke up at 6:00 a.m. and heard a noise that sounded like the cellar door rattling. He subsequently saw an individual trying to open the door of defendant's truck and another individual trying to open the door of the detached garage.

---

[1] This is the second time this matter has been before this Court. As will be discussed *infra*, *People v Lawrence*, unpublished per curiam opinion of the Court of Appeals, issued February 13, 2018 (Docket No. 339228), dealt primarily with whether, relative to defendant's claim of self-defense, the decedents' conduct prior to their deaths was admissible other-acts evidence.

Defendant testified that he picked up his rifle, went outside onto his porch, told the individuals to leave the property, and fired his weapon when the individuals were running toward him. At trial, defendant claimed he was acting in self-defense when he shot the decedents. Defendant testified that the situation "scared the hell out of" him. Defendant additionally testified that he did not intend to kill the decedents and he would not have shot if they had been running away. Defendant testified he did not see the decedents with any guns or weapons.

Police were summoned, and on their arrival found the two people dead on defendant's property. The medical examiner testified that each of the decedents died from a single gunshot wound: one had a gunshot wound with a bullet entry point through the left side of his head and the other had a gunshot wound with a bullet entry point through his back. There was circumstantial evidence at the scene that the decedents had broken into the mobile home and travel trailer located on the parcel adjacent to defendant's residence.

The jury convicted defendant as previously stated, and this appeal followed.

## II. RIGHT TO PRESENT A DEFENSE

In his appeal, defendant argues that he was denied his due-process right to present a defense because the trial court did not allow the admission of prior-bad-acts evidence that the decedents had been on a "crime spree," which apparently involved a series of break-ins, shortly before they entered defendant's property. Defendant maintains that prohibiting this evidence prevented him from showing that the decedents were felons for purposes of presenting his fleeing-felon defense and establishing that he was justified in using deadly force to apprehend fleeing felons. Defendant argues that this other-act evidence was relevant to demonstrating that the decedents were actually committing felonies on defendant's property on the morning of the incident.

## A. STANDARD OF REVIEW

"[W]e review de novo the question whether a defendant was denied the constitutional right to present a defense." *People v Unger*, 278 Mich App 210, 247; 749 NW2d 272 (2008). This Court reviews for an abuse of discretion a trial court's decision regarding the admission of evidence, but we review de novo the preliminary question of law whether a rule or statute precludes admission of evidence. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "The trial court abuses its discretion when its decision is outside the range of principled outcomes." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "A preserved trial error in admitting or excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id.*, citing *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999); see also MCL 769.26.

## B. ANALYSIS

"[A] criminal defendant has a state and federal constitutional right to present a defense." *Unger*, 278 Mich App at 250 (quotation marks and citation omitted). While this constitutional right "guarantees criminal defendants a meaningful opportunity to present a complete defense," *id.* at 249 (quotation marks and citation omitted), "an accused's right to present evidence in his defense is not absolute," *id.* at 250. "The right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process," which include

the state of Michigan's "legitimate interest in promulgating and implementing its own rules concerning the conduct of trials" and our Supreme Court's "broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *King*, 297 Mich App at 473-474 (quotation marks and citations omitted). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. at 474 (quotation marks and citation omitted).

Our Supreme Court has recognized that deadly force may be used under some circumstances to apprehend a fleeing felon:

> "[B]oth officers and private persons seeking to prevent a felon's escape must exercise reasonable care to prevent the escape of the felon without doing personal violence, *and it is only where killing him is necessary to prevent this escape, that the killing is justified. . . . If a killing is not justifiable, it is either murder or manslaughter.*" [*People v Couch*, 436 Mich 414, 421; 461 NW2d 683 (1990), quoting *People v Gonsler*, 251 Mich 443, 446-447; 232 NW 365 (1930), (some quotation marks omitted; ellipsis in original).]

This Court in *People v Hampton*, 194 Mich App 593, 596-597; 487 NW2d 843 (1992), after acknowledging the statutory authority in MCL 764.16[2] permitting private persons to make arrests for felonies, explained as follows:

> [T]he statute fails to address the issue whether a private person may use deadly force. We therefore turn to the common law.

---

[2] MCL 764.16 provides as follows:

> A private person may make an arrest--in the following situations:
>
> (a) For a felony committed in the private person's presence.
>
> (b) If the person to be arrested has committed a felony although not in the private person's presence.
>
> (c) If the private person is summoned by a peace officer to assist the officer in making an arrest.
>
> (d) If the private person is a merchant, an agent of a merchant, an employee of a merchant, or an independent contractor providing security for a merchant of a store and has reasonable cause to believe that the person to be arrested has violated section 356c or 356d of the Michigan penal code, Act No. 328 of the Public Acts of 1931, being sections 750.356c and 750.356d of the Michigan Compiled Laws, in that store, regardless of whether the violation was committed in the presence of the private person.

The common law recognizes two categories of justifiable deadly force used by a private person: where the person making the arrest is met with force from the person being arrested and where force is necessary to prevent the flight of a suspected felon. *People v Whitty*, 96 Mich App 403, 411; 292 NW2d 214 (1980). Because the facts here do not indicate that defendant perceived any threat of force by the decedent, resolution of this case hinges upon the latter category. According to this Court, the use of deadly force to prevent the escape of a fleeing felon is justifiable where the following three circumstances are present: (1) the evidence must show that a felony actually occurred, (2) the fleeing suspect against whom force was used must be the person who committed the felony, and (3) the use of deadly force must have been "necessary" to ensure the apprehension of the felon. *Whitty*, *supra*, pp 411, 413.

We additionally recognized in *Hampton* that the *Couch* Court had "held that the common law regarding a private person's use of deadly force to apprehend felons was adopted by the Legislature through its fifty-year acquiescence following the decision in *People v Gonsler*, 251 Mich 443; 232 NW 365 (1930)." *Hampton*, 194 Mich App at 597, citing *Couch*, 436 Mich at 421.

Defendant claims that he was denied the opportunity to present his fleeing felon defense at trial as a justification for his use of lethal force against the decedents. However, defendant raised this defense at trial and the trial court instructed the jury on the fleeing-felon defense. Defendant testified without objection that the decedents were attempting to break into his vehicle and detached garage to show that the decedents were engaged in felonious conduct on his property. There was additional circumstantial evidence of the decedents' felonious conduct; burglary tools were found near their bodies, there was evidence that someone had broken into the mobile home and travel trailer on defendant's adjoining property, and the decedents were dressed in dark, heavy clothing more appropriate for much colder weather. Importantly, the jury was specifically instructed on the fleeing-felon defense.

Our review of defendant's argument defendant that he was denied the constitutional right to present a defense leads us to conclude that defendant has mislabeled his argument. In his appeal, defendant does not argue that the application of any of the implicated rules of evidence violated his constitutional rights. We reach this conclusion in part because defendant has failed to show that his right to present a defense was violated. *King*, 297 Mich App at 474. Thus, despite characterizing his appellate issue in this manner, he has actually presented a purely evidentiary issue. We thus proceed accordingly.

Defendant argues that the evidence of defendant's other acts was admissible under MRE 404(b)(1), which provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The admissibility of evidence under MRE 404(b) is determined under the following standard set forth by our Supreme Court in *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

In the prior appeal, *People v Lawrence*, unpublished per curiam opinion of the Court of Appeals, issued February 13, 2018 (Docket No. 339228), the prosecution argued the trial court erred in its pretrial ruling under MRE 404(b) allowing defendant to introduce evidence the decedents committed a series of break-ins during the hours leading up to the shooting. Defendant argued, and the trial court seemingly agreed, that evidence of prior break-ins was admissible for purposes of proving modus operandi. *Id*. at 1-2. This Court reversed noting: "defendant was charged with second-degree murder and argues that he acted in self-defense," *Id*. at 4, and we concluded that evidence of the decedents' alleged crime spree and the question whether the decedents were legally on defendant's property were not relevant to whether defendant committed second-degree murder or acted in self-defense. *Id*. at 3-4. The only defense at issue in our prior opinion was self-defense, and we expressed no opinion—implicitly or explicitly—on any issue related to the fleeing-felon defense.

Following our adjudication of the prior appeal and remand to the trial court, the trial court opined that based on this Court's prior decision, the law of the case doctrine prohibited evidence of decedents' prior bad acts. However, as alluded to herein, the prior appeal dealt solely with whether decedents' prior bad acts were admissible relative to defendant's assertion of self-defense, or whether the prior bad acts were admissible relative to a charge of second-degree murder. "Under the law of the case doctrine, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) (quotation marks and citation omitted). "Thus, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Id*. at 260. "Law of the case applies, however, only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Id*. Thus, because our prior opinion did not decide the issue whether the proposed other-acts evidence was prohibited *for purposes of the fleeing-felon defense*, the trial court erred to the extent that it based its ruling on the law of the case doctrine. *Id*. Accordingly, we next turn to whether, as a result of the trial court erroneously excluding the 404(b) evidence on the basis of the law of the case doctrine, defendant is entitled to any form of relief.

From the outset we note our consideration of defendant's claim of error is hampered by defendant's failure to provide a specific description of the actual evidence he deemed erroneously excluded coupled with the State's failure to cite or discuss meaningful legal authority relative to the fleeing-felon defense. Nonetheless, assuming without deciding that the proposed other-acts evidence was admissible for a proper purpose and not merely improper propensity or character

evidence, and assuming the evidence would also satisfy all of the *VanderVliet* prongs, we conclude that any error in its exclusion was harmless.

We begin with presuming that the evidence sought by defendant was that the decedents were engaged in a series of break-ins on private property prior to entering defendant's property. Based on this presumption, we conclude that the proposed evidence would therefore be relevant only to the question of whether the decedents committed a felony. As previously explained, commission of a felony is a necessary component of the justifiable use of deadly force to prevent the escape of a fleeing felon. See *Hampton*, 194 Mich App at 596-597. Defendant argues that the error in excluding this evidence was not harmless because "[h]ad [defendant] been able to show he was firing at felons who were fleeing, he would have been justified in his actions." Aside from the fact that defendant was able to present through his testimony that he saw the decedents attempting to open his truck and garage before he fired his weapon, he neglects to add that the trial court instructed the jury on the fleeing-felon defense.

At its core, defendant's arguments reflect a fundamental misunderstanding of the nature of the fleeing-felon defense. Under defendant's theory, a person would be entitled to shoot any other person who (1) had committed a felony and (2) happened to be running away. Clearly, this perception of the fleeing-felon defense does not comport with our case law.

Our case law instructs that the justification to use deadly force in the context of the fleeing-felon defense is tied to the right of a citizen to make a citizen's arrest. We are also instructed that a citizen's right to make an arrest does not convey with it either the unconditional authority or an unrestricted right to shoot any felon who runs away. See *Whitty*, 96 Mich App at 416 ("The occasion may arise where the private citizen is confronted with the choice of attempting a citizen's arrest, or letting the felon escape. In order to make the citizen's arrest, it is regrettable, but sometimes necessary, to make use of deadly force. The common law in Michigan recognizes this but stops far short of granting the private citizen a license to hunt down and kill those suspected of committing a felony."); see also *id*. at 413 ("It is true that before deadly force may be used *to stop a felon from fleeing from an attempted arrest*, the use of such force must be 'necessary.'") (emphasis added); *Hampton*, 194 Mich App at 596 (recognizing that the justifiable use of force to prevent the escape of a fleeing felon is grounded in a private person's right to effectuate an arrest). Our Supreme Court further instructed that the fleeing-felon defense is only available to a private person who was "seeking to prevent a felon's escape" and "exercise[d] reasonable care to prevent the escape of the felon without doing personal violence." *Couch*, 436 Mich at 421.

As the State argues in its brief, defendant's main defense was that when he fired his weapon, he was acting in self-defense. His trial testimony focused on the firing of his weapon to prohibit or extinguish a perceived threat to himself. Defendant testified that he fired his weapon because he saw the decedents attempting to break into his vehicle and detached garage, they ran toward him, and he was scared. Defendant did not testify that he attempted to detain the decedents, arrest them, or otherwise prevent them from escaping custody or being brought to justice for their alleged criminal acts.

In the absence of evidence that defendant intended to capture the decedents coupled with the trial court instructing the jury on the fleeing-felon defense, we conclude it is not more probable that the jury would have reached a different outcome had the proposed other bad acts evidence been admitted. *King*, 297 Mich App at 472. In reaching this conclusion, we do not suggest that

defendant had the burden at trial of proving that the killing was justified, see *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009) (stating that a conviction for second-degree murder requires the prosecution to prove that the defendant acted "without justification or excuse"). Rather, we conclude that after examining all of the evidence to determine whether defendant has met his burden on appeal to affirmatively demonstrate that the error resulted in a miscarriage of justice, see *Lukity*, 460 Mich at 495, it was not more probable than not that the error was outcome determinative. Therefore, we conclude that exclusion of the other bad acts evidence at issue was harmless.

## III. FLEEING-FELON JURY INSTRUCTION

Next, defendant contends he was denied his right to a properly instructed jury because the fleeing-felon instruction given to the jury improperly shifted the burden of proof by failing to explicitly state that the prosecution had the burden of proving beyond a reasonable doubt that defendant was not justified in using deadly force to prevent a fleeing felon from escaping.

The prosecution and defense each presented a version of the instruction, and defense counsel said that he would leave it to the court's discretion as to which instruction to use. The trial court stated it would use the prosecutor's proposed instruction. After the final jury instructions, defense counsel expressed satisfaction with the instructions as given. Thus, at a minimum, defendant acquiesced to the trial court's decision to use this instruction. "Counsel may not harbor error as an appellate parachute." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). Moreover, defense counsel's affirmative expression of approval with the instructions as given constituted a waiver that extinguished any error. *Id*. at 215.

However, addressing the merits of defendant's argument, we nonetheless conclude that defendant has not demonstrated any entitlement to appellate relief.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Head*, 323 Mich App 526, 537; 917 NW2d 752 (2018) (quotation marks and citation omitted). "Jury instructions must clearly present the case and the applicable law to the jury." *Id*. (quotation marks and citation omitted). "[A]n imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. (quotation marks and citation omitted; alteration in original). Claims of instructional error are ordinarily reviewed de novo, *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011), but unpreserved claims of instructional error are reviewed for plain error affecting substantial rights, *Head*, 323 Mich App at 537.

In this case, defendant claims that the following instruction given by the trial court was erroneous:

> I'm now going to instruct you on the use of deadly force to apprehend a fleeing felon. The defendant contends that the killing was justified because it occurred under circumstances entitling him to use deadly force to effectuate the arrest of a fleeing felon. *If you have a reasonable doubt as to whether the defendant did indeed use deadly force to prevent a felon from escaping, then the defendant is not guilty of any crime.*

-7-

An individual is entitled to use deadly force to prevent the escape of a fleeing felon only when all of the following circumstances exist. The evidence must show that a felony had actually been committed. It is insufficient if the defendant reasonably believed that the felony had been committed.

The evidence must show that the act of the defendant was for the purpose of preventing the felon's escape. The evidence must show that the defendant exercised reasonable care to prevent the escape without doing personal violence to the individual fleeing. The evidence must also show that the use of deadly force was necessary to prevent the escape.

*Whether the evidence raises a reasonable doubt that under these standards the defendant was justified in using deadly force to apprehend a fleeing felon is a question of fact you must determine.* [Emphasis added to reflect portions specifically challenged by defendant.]

We conclude this instruction adequately stated the law regarding the fleeing-felon defense, as outlined in *Couch*, 436 Mich at 421, and *Hampton*, 194 Mich App at 596-597, which we have quoted in part II of this opinion. Moreover, the trial court's statement that "[i]f you have a reasonable doubt as to whether the defendant did indeed use deadly force to prevent a felon from escaping, then the defendant is not guilty of any crime" reasonably conveyed the same information that defendant claims requests be conveyed—i.e., the prosecutor had to prove *beyond* a reasonable doubt that defendant did not act to apprehend a fleeing felon. Accordingly, defendant has not demonstrated any error requiring appellate relief.

## IV. PROSECUTORIAL MISCONDUCT

Defendant also raises a claim of prosecutorial misconduct, arguing that after the prosecutor offered to stipulate that the decedents were engaged in felonious conduct prior to being killed, the prosecutor improperly rescinded the stipulation by challenging whether decedents committed felonious acts leading up to the shooting.

Defendant's argument relies in part on this Court's prior decision in the prosecutor's interlocutory appeal before trial. See *Lawrence*, unpub op.

As previously noted, our prior decision reversed the trial court's pretrial ruling permitting defendant to introduce evidence that the decedents had committed a series of break-ins during the hours leading up to the shooting under MRE 404(b) for purposes of proving modus operandi. *Id*. at 1-2, 4. After reaching conclusions previously noted in this opinion, this Court stated:

Defendant argues on appeal that "[t]he relevant fact that should be placed in front of the jury is that the [decedents] were not invited guests, and were not legally on [his] property." However, whether the decedents were, or were not, legally on defendant's property is not relevant to whether defendant acted in self-defense or committed second-degree murder. Whether defendant *believed* that the decedents were on his property illegally may be relevant to his self-defense theory, but the proffered evidence does not establish what defendant did or did not believe. [*Id*. at 3-4 (alterations in original).]

-8-

In the instant appeal, defendant relies on a footnote from our previous opinion that was attached to the above quotation as a basis for accusing the prosecutor of committing misconduct at defendant's trial. In that footnote, we stated:

> Defendant argues that the legality of the decedents' presence on his property was "a fact in issue." However, this is simply not true. At the hearing on defendant's motion, *the prosecution stated that it was not disputing this fact and offered to stipulate that the decedents were uninvited and were attempting to break into defendant's garage and vehicle*. [*Id*. at 4 n 2 (emphasis added).]

Following this opinion, the matter proceeded to trial where defendant asserted his fleeing-felon defense and the prosecutor did not stipulate that the decedents were attempting to break into defendant's garage and vehicle. Instead, the prosecutor argued that it was unknown whether the decedents were actually attempting to break into defendant's garage and vehicle, that the only thing known for certain was that the decedents were trespassing, and that defendant shot them because they were trespassing. Defendant now argues on appeal that the prosecution committed misconduct by improperly minimizing the decedents' conduct and disputing that they had committed any felonies because these arguments disregarded the prosecution's stipulation that the decedents were uninvited and were attempting to break into defendant's garage and vehicle.

Defendant's argument ignores the fact that the fleeing-felon defense was not at issue in our prior opinion and that the apparent change in prosecution strategy was precipitated by defendant's assertion of this defense. Following our initial decision in this matter, defendant put into question whether decedents were engaged in the commission of a felony prior to their deaths when he raised the fleeing-felon defense. See *Hampton*, 194 Mich App at 596-597. Thus, the prosecutor's amended arguments regarding the nature of the conduct committed by the decedents that morning and what the prosecutor believed the evidence showed were arguments that were responsive to defendant's newly asserted defense that the killings were justified as necessary to apprehend fleeing felons.

Because defendant did not contemporaneously object and request a curative instruction related to any of the prosecutor's allegedly improper statements, this issue is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). While claims of prosecutorial misconduct are generally reviewed de novo, our review is for plain error affecting substantial rights where there was no contemporaneous objection or request for a curative instruction regarding the alleged error. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Id*.

"Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Accordingly, we evaluate a prosecutor's comments "in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*. "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Id*.

In this case, the prosecutor's statements that defendant challenges on appeal were responsive to an element of defendant's asserted fleeing-felon defense, which was not a defense

that had been raised when the matter was previously before this Court. By asserting a new, additional defense, defendant accordingly prompted the prosecutor to also change their strategy. Defendant has not provided any argument explaining how this tactic was unfair or improper. Rather, defendant asserts that it was "unfair" of the prosecutor to challenge an underlying element of one of his defenses. This mere assertion is not evidence of any inappropriate behavior or argument by the prosecutor, accordingly, this Court has no basis on which it can grant defendant relief. See, *Dobek*, 274 Mich App at 64.

## V. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Next, defendant argues that his murder convictions were not supported by sufficient evidence and the jury's verdict finding him guilty of murder was against the great weight of the evidence.[3]

"Criminal defendants do not need to take any special steps to preserve a challenge to the sufficiency of the evidence." *People v Cain*, 238 Mich App 95, 116-117; 605 NW2d 28 (1999). "In challenges to the sufficiency of the evidence, this Court reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Roper*, 286 Mich App at 83.

With respect to the great weight of the evidence argument, defendant raised this issue in the trial court through a motion for new trial. The trial court denied defendant's motion. "In contrast to a challenge to the sufficiency of the evidence, a motion for a new trial based on a belief that the verdict was against the great weight of the evidence does not implicate issues of constitutional magnitude and, for that reason, the decision to grant a new trial is committed to the discretion of the trial court." *Id*. at 83-84. A trial court's decision on a great-weight-of-the-evidence motion is reviewed for an abuse of discretion, which occurs if the trial court "selects an outcome that is not within the range of reasonable and principled outcomes." *Id*. at 84. As this Court explained in *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003), the

> test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. Unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination. [Quotation marks, brackets, and citations omitted.]

---

[3] Defendant explicitly frames his arguments on these issues as challenges to his murder convictions. Therefore, any challenge to his felony-firearm conviction based on the sufficiency of the evidence or great weight of the evidence is abandoned. *Harris*, 261 Mich App at 50.

"The elements of second-degree murder are (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015) (quotation marks and citation omitted). Defendant concedes on appeal that only elements (3) and (4) are in dispute.

Defendant argues there was insufficient evidence he acted with malice because he did not intend to kill the decedents and only acted to prevent the "invasion" and to protect himself and his wife. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. (quotation marks and citation omitted). In this case, there was evidence that defendant fired his gun at the decedents and they each died from a gunshot wound. Shooting a gun at a person shows, at a minimum, a wanton and willful disregard of the likelihood that the natural tendency of such an act is to cause death or great bodily harm. Defendant's arguments to the contrary, which essentially amounts to a claim that he did not actually intend to kill the decedents,[4] are unavailing because the prosecution only needs to "prove the intent to do an act that is in obvious disregard of life-endangering consequences" and "is not required to prove that the defendant actually intended to harm or kill." *Id*. (quotation marks and citation omitted). Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence to prove the element of malice beyond a reasonable doubt.

Defendant also maintains that the killings were justified to apprehend fleeing felons or as acts in self-defense, hence, the killings were legally justified.

As set forth above with respect to the fleeing-felon defense,

"[B]oth officers and private persons seeking to prevent a felon's escape must exercise reasonable care to prevent the escape of the felon without doing personal violence, *and it is only where killing him is necessary to prevent this escape, that the killing is justified. . . . If a killing is not justifiable, it is either murder or manslaughter*." [*Couch*, 436 Mich at 421, quoting *Gonsler*, 251 Mich at 446-447 (some quotation marks omitted; ellipsis in original).]

Accordingly, "the use of deadly force to prevent the escape of a fleeing felon is justifiable where the following three circumstances are present: (1) the evidence must show that a felony actually occurred, (2) the fleeing suspect against whom force was used must be the person who committed the felony, and (3) the use of deadly force must have been 'necessary' to ensure the apprehension of the felon." *Hampton*, 194 Mich App at 596-597 (citation omitted).

In this case, as previously indicated, the evidence does not support a conclusion that defendant shot the decedents while attempting to prevent them from escaping arrest. As we have explained in this opinion, defendant's argument is that he was justified to shoot the decedents because they committed a felony and fled. But those facts alone, even if true, are insufficient to

---

[4] Defendant's arguments challenging the malice element also appear to relate to his claim that his actions were justified. We address this claim below.

justify the use of deadly force because deadly force is only justified to prevent a felon from fleeing an attempt to effectuate a citizen's arrest. See *Couch*, 436 Mich at 421; *Hampton*, 194 Mich App at 596-597; *Whitty*, 96 Mich App at 413, 416.

To reiterate, defendant testified he fired his weapon because he saw the decedents attempting to break into his vehicle and detached garage, they ran toward him, and he was scared. Defendant never testified he attempted to detain decedents or prevent the decedents from escaping capture. In fact, defendant testified he would not shot at the decedents if they had run away. Viewing the evidence in a light most favorable to the prosecution, *Roper*, 286 Mich App at 83, the jury could reasonably conclude beyond a reasonable doubt that defendant did not shoot the decedents for the purpose of preventing fleeing felons from escaping apprehension and that defendant's actions were therefore not justified under the fleeing-felon defense.

Defendant also argues the killings were justified because he acted in lawful self-defense.

"At common law, the affirmative defense of self-defense justifies otherwise punishable criminal conduct, usually the killing of another person, if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (quotation marks and citation omitted). However, "[w]ith the enactment of the Self–Defense Act (SDA), MCL 780.971 et seq., the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Id*. at 708.

MCL 780.972(1) provides in pertinent part as follows:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

As this Court has previously observed, this statutory provision still requires a person to "have an honest and reasonable belief that there is a danger of death, [or] great bodily harm . . . in order to justify the use of deadly force." *People v Guajardo*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013).

In this case, defendant argues that he was entitled to a presumption that he had an honest and reasonable belief that imminent death or great bodily harm would occur to himself or another under MCL 780.951(1) because the decedents were in the process of breaking and entering *a dwelling* or had already broken and entered *a dwelling* and were still present inside. MCL 780.951(1) provides that there is

> a rebuttable presumption in a civil or criminal case that an individual who uses deadly force or force other than deadly force under [MCL 780.972] has an honest

-12-

and reasonable belief that imminent death of, sexual assault of, or great bodily harm to himself or herself or another individual will occur if both of the following apply:

(a) The individual against whom deadly force or force other than deadly force is used is in the process of breaking and entering a dwelling or business premises or committing home invasion or has broken and entered a dwelling or business premises or committed home invasion and is still present in the dwelling or business premises, or is unlawfully attempting to remove another individual from a dwelling, business premises, or occupied vehicle against his or her will.

(b) The individual using deadly force or force other than deadly force honestly and reasonably believes that the individual is engaging in conduct described in subdivision (a).

However, MCL 780.951(3)(c) specifically defines "dwelling" for purposes of this section to mean "a structure or shelter that is used permanently or temporarily as a place of abode, including an appurtenant structure attached to that structure or shelter."

Here, we cannot find in this record evidence that would show the decedents, at the time defendant used deadly force against them, were in the process of breaking and entering a "dwelling" or were still inside a "dwelling" into which they had already broken and entered. Defendant testified he fired his weapon after seeing the decedents attempting to gain entry to his vehicle and his detached garage. His attorney asked defendant if the garage was his "man cave," and defendant replied, "No." Defendant said that he "k[ept] all [his] gardening tools" there. Thus, there was no evidence that the garage was used as a place of abode or attached to a place of abode. MCL 780.951(3)(c). Although there was some circumstantial evidence suggesting the decedents entered the mobile home on defendant's adjacent property, they were not inside the mobile home when they were shot. Instead, they were outside the main house with various obstacles between them and the porch of defendant's house where defendant was standing when he shot them. Accordingly, the decedents were not still inside a dwelling that they had broken and entered, *id*., and they were not in the process of committing a home invasion or inside a dwelling where they had committed a home invasion, *id*.; MCL 750.110a. Defendant has not shown that he was entitled to the presumption contained in MCL 780.951(1).[5]

Furthermore, the trial record contains no evidence that the decedents threatened defendant or fought him. Defendant claimed that he shot from his porch, but admitted that the decedents would have needed to contend with various obstacles to have reached him on the porch. Defendant testified that "if they had a gun they could have shot me from down there." However, defendant

---

[5] Defendant also argues that he was denied the effective assistance of counsel because his trial counsel failed to request an instruction on this presumption in accordance with MCL 780.951. However, because defendant has not shown that the requirements of MCL 780.951(1) were met, he has not shown that such a request would not have been denied. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Anderson*, 322 Mich App 622, 629 n 14; 912 NW2d 607 (2018) (quotation marks and citation omitted).

testified he did not see guns or anything else in the decedents' hands. Defendant admitted that one decedent was "out of sight" when he finally stopped firing. In addition, one decedent died from a gunshot wound to his back, and his body was found approximately 340 feet from the bottom of the porch steps. The other decedent's body was located approximately 90 feet from the bottom of the steps. Defendant told an interviewing police officer, "[W]hat a dumb ass to pick the gun up." The evidence also illustrates that any belief defendant may have held regarding the necessity of using deadly force to prevent an imminent threat of death or great bodily harm was not *reasonable* because an ordinarily prudent and intelligent person would not find it necessary to shoot unarmed persons who were a significant distance away and had not initiated a physical attack. See *Guajardo*, 300 Mich App at 42 ("The reasonableness of a person's belief regarding the necessity of deadly force depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor.") (quotation marks and citation omitted). Viewed in a light most favorable to the prosecution, *Roper*, 286 Mich App at 83, the evidence was sufficient for the jury to find beyond a reasonable doubt that defendant did not act in self-defense.

Defendant's arguments that his murder convictions were against the great weight of the evidence largely mirror his sufficiency arguments. Crucially, defendant's great-weight arguments are premised on his contention that the trial court, in addressing defendant's motion for a new trial, "sidestepped" the great-weight-of-the-evidence issue by declining to override the jury's findings.

Contrary to defendant's argument, a claim that the verdict was against the great weight of the evidence does not entitle a defendant to a de novo review by the trial judge of the evidence and the propriety of the jury's verdict. "A trial judge does not sit as the thirteenth juror in ruling on motions for a new trial and may grant a new trial only if the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). Additionally, a trial judge's disagreement with the verdict does not justify granting a new trial. *Id*. at 644. The focus is on whether there is "a real concern that an innocent person may have been convicted" or whether it "would be a manifest injustice" to allow the guilty verdict to stand." *Id*. (quotation marks and citation omitted). "[A] new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *Id*. at 642 (quotation marks and citation omitted). In this case, as fully explained above, the evidence overwhelmingly supported the jury's verdict. Thus, the evidence certainly did not preponderate heavily against the verdict such that a serious miscarriage of justice would result by allowing it to stand. Defendant's convictions were not against the great weight of the evidence, and accordingly, he is not entitled to relief.

Affirmed.


/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron

-14-